Filed 10/23/24  S.M. v. K.H. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| S.M.,<br><br>    Appellant,<br><br>        v.<br><br>K.H.,<br><br>    Respondent. | G063162<br><br>(Super. Ct. No. 23V000763)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael E. Perez, Judge. Reversed and remanded with directions.

Community Legal Aid SoCal and Erica Embree Ettinger; Gibson Dunn & Crutcher, Michael J. Holecek, Jun Nam and Jacob U. Arber for Appellant.

Family Violence Appellate Project, Arati Vasan and Jennafer D. Wagner Project as Amicus Curiae on behalf of Appellant.

No appearance for Respondent.

\*          \*          \*

S.M. appeals from the trial court's denial of her request under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) (DVPA) for a domestic violence restraining order (DVRO) against K.H. who fathered two of her children.[1] S.M. raises three arguments on appeal. First, she contends the court erred by finding no credible acts of abuse despite evidence K.H. had violated a temporary restraining order (TRO). Second, she argues the court did not consider the totality of the circumstances in denying the DVRO. Finally, she claims the court improperly relied on findings from a San Digo judge in a separate custody proceeding instead of making its own findings of abuse.

For the reasons below, we find the court's ruling was based on a misunderstanding of the record and applicable law. We accordingly reverse and remand for further proceedings.

STATEMENT OF FACTS

I.

S.M.'S DVRO REQUEST

On April 6, 2023, S.M. filed, in propria persona, a DVRO request seeking protection from K.H. for herself and her four children, two of whom were fathered by K.H. S.M. and K.H. had been dating for several years and lived in San Diego.

In her DVRO request, S.M. identified the following instances of abuse occurring in March and April 2023. First, on March 23, 2023, K.H. argued with S.M. after he got home from work around 7:30 a.m. He grabbed a knife, passed it back and forth in his hand, and told his 15-month-old daughter to "shut up[,] pointing the knife at her." He also told S.M. he would kill her if

---

[1] All further statutory references are to the Family Code unless otherwise stated.

2

she did not "drop the child support case." That night, S.M. left their home with her four children because she was afraid and believed K.H. would kill her.

Second, the next day on March 24, 2023, K.H. left a voicemail for S.M. stating he was going to find and kill her. Third, on April 4, 2023, K.H. called the school of S.M.'s teenage son and pretended to be other family members to get information about S.M.'s children and their attendance records. Finally, the next day on April 5, 2023, K.H. found S.M. at a domestic violence shelter where she was staying with her children. According to the DVRO request, K.H. trespassed onto the property, asked staff about S.M., and refused to leave. S.M. was forced to "sneak out" with her children.

S.M. separately identified a prior court case she had filed in San Diego in October 2022—about six months before her DVRO request. She explained she "went to court because [K.H.] was threatening to kill me and my four children." According to S.M., K.H. called her a "'bitch'" and "'whore,'" choked her until it was hard to breathe, and left a bruise on her wrist. It appears S.M. sought a DVRO for this conduct, and the San Diego trial court denied S.M.'s request because it did not find S.M.'s testimony to be credible.

Finally, S.M. noted K.H. "calls nonstop, texts nonstop, emails nonstop," "[c]alls from different numbers," and "harasses [her] and [her] mother."

Based on the above, S.M. sought an order to not abuse, a no contact order, and a stay away order. She also requested sole custody of their two children with no visitation for K.H.

II.

THE COURT'S TEMPORARY RESTRAINING ORDER

On April 6, 2023, the court issued a TRO against K.H. The TRO ordered K.H. to not "[h]arass, attack, strike, threaten, assault (sexually or

3

otherwise), hit, follow, stalk, molest, destroy personal property, keep under surveillance, impersonate . . ., block movements, annoy by phone or other electronic means . . ., or disturb the peace" of S.M. and her four children. The TRO further ordered K.H. to stay at least 100 yards away and to not contact S.M. and her four children "directly or indirectly, by any means, including by telephone, mail, email, or other electronic means." The court also provided sole legal and physical custody of the two shared children to S.M. with no visitation for K.H. The court scheduled a hearing on April 27, 2023 to determine if a permanent DVRO should issue.

III.

EVENTS OCCURRING AFTER THE TRO

On April 7, 2023, K.H. filed an ex parte application and order in San Diego seeking custody of his children. On April 10, 2023, the San Diego trial court granted ex parte relief in K.H.'s favor.[2] On the same day, K.H. was personally served with the TRO issued against him by the Orange County trial court.

IV.

K.H.'S RESPONSE TO THE TRO

On April 17, 2024, K.H. filed a response to S.M.'s DVRO request.

_____

[2] We grant S.M.'s request that we take judicial notice of K.H.'s April 2023 ex parte application and the temporary ex parte orders issued by the San Diego trial court. (Evid. Code, § 452, subd. (d).) We also grant S.M.'s motion to seal the latter documents because: (1) there exists an overriding interest that overcomes the right of public access to these documents in that they are locked on the San Diego trial court's docket and are not accessible to the public; (2) the overriding interest supports sealing these two documents; (3) a substantial probability exists the overriding interest will be prejudiced if the records are not sealed; (4) this sealing order is narrowly tailored in that it seals no more than is necessary to protect the parties' privacy and the confidential nature of the documents; and (5) there is no less restrictive means to protect these confidential records. (Cal. Rules of Court, rule 2.550(d)(1)-(5).)

He claimed he never abused or threatened anyone and that S.M. was "lying" and "running from her welfare fraud."

In support of his response, K.H. attached an e-mail that appears to address the trial court and provides a different version of events. In the e-mail, he claimed S.M. fled to a domestic violence shelter in Orange County because she was under investigation for welfare fraud in San Diego. He suggested S.M. may have improperly received CalFresh benefits for their children. K.H.'s mother, who lived with them, was "served papers from the San Diego Sheriff office" on March 21, 2023. The next day, K.H. and S.M. went to a family law court and were told to go to a "Child Support Center." They decided "to take care of this issue" the next day on March 23, 2023. According to K.H., he came home from work that day around 7:45 a.m., and his mother who lived with them was home. After S.M. did some chores and errands, she picked up her two children from school, which is "when she stole [K.H.'s] cell phone." K.H. claimed he went to work that evening, and S.M. left the home with their children around 3:00 or 4:00 a.m. in the morning. He suggested S.M. tried "to frame" him by sending messages to herself from his phone.

In his e-mail, K.H. also indicated he found S.M. at a domestic violence shelter in Orange County on April 5, 2023. It appears he may have used a private investigator to find S.M. K.H. also said he called S.M. and sent e-mails to her to locate their children and bring them back home. He further noted he requested an "ex parte order" and a "custody order" in San Diego on April 7, 2023 and "was granted the order and the return of" their children. He filed his request in San Diego before he was served with the TRO issued by the Orange County trial court.

In addition to the above e-mail, K.H. submitted letters of support

5

from friends and parents of children who K.H. had mentored. He also included an e-mail from his mother stating she did not witness any altercation between K.H. and S.M. on March 23, 2023.

A few days before the hearing, K.H. submitted additional documentation, including minutes from the San Diego trial court denying S.M.'s prior DVRO request in November 2022. Among other things, he also included an April 2, 2023 invoice for a new cellphone. The invoice included a handwritten note stating K.H. had purchased a new phone on April 2, 2023 and that S.M. had stolen his prior phone on March 23, 2023.

V.

THE DVRO HEARING

Both S.M. and K.H. appeared in propria persona and testified at the DVRO hearing on April 27, 2023.

*A. S.M.'s Testimony*

S.M. testified K.H. violated the TRO four times since it had been issued. She explained: "[H]e e-mailed me three times, and today when he arrived, he said some comments to me saying, 'I can't believe you have our children in a shelter. You're a bum, and that haircut is ghetto.'" When asked about the three e-mails, S.M. testified K.H. sent an e-mail on April 11, 2023 stating, "'Please give me our children'" and sent three pictures of "court paperwork" on April 11, 2023. On April 12, 2023, he sent an e-mail stating, "'I just want our family back. Please, Stephanie, this has gone too far.'" On April 13, 2023, he sent an e-mail stating, "'Ex parte hearing. You are to appear for emergency ex parte hearing tomorrow at 8:30." S.M. testified she had copies of the e-mails.[3]

_____

[3] We grant S.M.'s unopposed motion to augment the record with the e-mails she received on April 11, 12, and 13, 2023 along with the voicemail she received on March 24, 2023. While those documents were not "filed or

6

The court then inquired about the court proceedings mentioned in the e-mails. K.H. explained he had filed an ex parte request in San Diego for "a custody visitation order" and was granted a TRO by the trial judge. The court asked for copies of the TRO, and K.H. stated he had a picture on his phone. The court reviewed the picture on K.H.'s phone and noted it appeared to be an April 7, 2023 order from the San Diego trial court. The court asked if S.M. had been served with a copy of the order, and K.H. responded that his mother sent a copy of the order to S.M. via e-mail.

S.M. next testified about a prior domestic violence incident and claimed K.H. had strangled her in October 2022.[4] In response, the court asked if there were any court orders other than the April 2023 order issued by the San Diego trial court. S.M. testified there was a court hearing regarding child custody scheduled in San Diego in March 2023, but she "got manipulated by [K.H.] to close the case."

The court then asked S.M. to describe any domestic violence or abuse that had occurred. S.M. testified about the March 23, 2023 incident mentioned in her DVRO request. She said she was not living with K.H. at the time and that she went to his home on March 23, 2023 to see her children. K.H. came home from work around 7:30 or 8:00 a.m. and said, "'Why am I still receiving paperwork, calls, e-mails, and text from Child Support?" According to

---

lodged" in the trial court (Cal. Rules of Court, rule 8.155(a)(1)), the augmentation rule "'is to be construed liberally' and allows a party to supplement the appellate record with any materials that were before the trial court." (*Global Modular, Inc. v. Kadena Pacific, Inc.* (2017) 15 Cal.App.5th 127, 152, fn. 5.) S.M. read the e-mails into the record, and the trial court listened to the voicemail at the hearing. We accordingly see no issue considering things clearly presented to the trial court.

[4] S.M. previously sought a DVRO for this conduct, but the San Diego trial court denied her request.

S.M., K.H. "grabbed a knife and was pacing back and forth saying, 'If you don't close the child support case, I will kill you.'" Their infant was crying, and "he told her to shut up with a knife in his hand." S.M. left but went back to his home the next day and took their two children. She stayed in a hotel and then fled to a domestic violence shelter in Orange County. The court asked if S.M. ever reported the incident to the police, and she stated she did not because she did not want to escalate the situation.

S.M. also testified K.H. left a voicemail for her the next day on March 24, 2023. The court listened to the voicemail and noted the voicemail stated: "'Why would you take my kids? Why would you fuck with their psychological development? Why would you do that in front of my face? Why would you come to my place at 3:00 a.m. and take the fucking kids?'" The court added: "And then at the end it's something about, 'I can't wait to find you and fucking kill you.'"

S.M. further testified K.H. called the police and claimed S.M. had kidnapped their children. He also called her son's school on April 4, 2024 and pretended to be the son's grandmother and father. S.M. explained that K.H. found her at the domestic violence shelter on April 5, 2023. She noted K.H. had trespassed, and the situation traumatized her children.

The court concluded by asking S.M. to describe any other domestic violence or abuse. S.M. responded that K.H. had choked her "within this year," spit on her, "grabbed a knife while holding [their] daughter," and said disrespectful things. She further testified K.H. told his friend that he was "'going to kill this bitch'" at some point in February 2023. The court stated S.M.'s DVRO request did not mention any choking and noted, "People are in prison for choking people." The court asked why she did not mention any choking incident in her request, and S.M. responded that she "just wanted to

8

keep it as the last incident . . . ." When asked if K.H. used a knife on multiple occasions, S.M. said K.H. had used a knife and threatened to kill her and her children in October 2022.[5]

Finally, S.M. testified about the recent ex parte relief granted in K.H.'s favor by the San Diego trial court in April 2023. She claimed she was never served with any related order, but she appeared at the hearing on April 14, 2023. According to S.M., the San Diego trial court said it could not do anything and that the parties had to attend the DVRO hearing in Orange County.

B. *K.H.'s Testimony*

Regarding the October 2022 incident, K.H. testified S.M. falsely accused him of choking her, and the San Diego trial court found S.M.'s story "did not match up" and dismissed the case. Referring to his April 2024 ex parte application filed in San Diego, he testified the San Diego trial court granted him custody of his kids. He noted S.M. appeared for a hearing on April 14, 2023, and the San Diego judge questioned why S.M. did not file a DVRO request in San Diego as opposed to Orange County. The San Diego trial court asked K.H. to report back about the DVRO hearing in Orange County after it had concluded.

Contrary to S.M.'s testimony, K.H. also testified S.M. and her children lived with him and his mother in San Diego in March 2023. He claimed S.M. did not come over on March 23, 2023 because they already lived together. When he came home from work in the morning, his mother was crying while telling him S.M. had left the home and said she would be right back. He testified he believed S.M. went to get food because they usually have

_____

[5] As noted *ante*, S.M. sought a DVRO because of the October 2022 incident, but the San Diego trial court denied her request.

breakfast together. He added: "Me and my mom sat there until like 10:00 or 11:00. [S.M.] wasn't returning my phone calls. That's when I knew the cycle of behavior is back. She's running . . . . [W]e have a welfare fraud case for [S.M.]."

After the court asked why S.M. would lie under oath, K.H. testified she wanted to "denounce [him] as a father in the home." The court further questioned why S.M. would want K.H. out of the home, and K.H. testified: "Because she's been reporting to welfare in the County of San Diego for the past four years that she's been by herself."

The court then asked about the March 24, 2023 voicemail on S.M.'s phone. K.H. testified he did not remember the voicemail and it did not sound familiar. He added: "That last little part, 'I'll kill you,' that's not my character. I know she has voice AI on her phone. [S.M.] can talk and make her voice sound like a man on her phone with the application." The court questioned whether K.H. called S.M. after she left with the children, and he said he called S.M.'s mother and cousin.

## VI.

### THE COURT'S ORDER DENYING THE DVRO

After hearing both parties' testimony, the court denied S.M.'s DVRO request from the bench. The court made several comments at the hearing to explain its reasoning. Pursuant to section 6306, the court noted it reviewed K.H.'s criminal history, and he did not have any relevant criminal history or police contact. The court also emphasized it had to "make credibility calls." The court then stated: "I don't know how . . . [S.M.] is articulate and circular as she is in wanting me to understand things that she wouldn't put forward that same effort in applying for a domestic violence protective order and include that [K.H.] had choked her and on more than one occasion

10

threatened to kill her with a knife. That doesn't help her credibility. I don't understand how that can be skipped or missed if you're really trying to protect yourself and protect your children."

The court added: "I wasn't there for any of this. I hope it didn't happen. I'm going to let you all work this out down in San Diego. [S.M.], I'm not finding sufficient credible evidence of domestic violence or abuse, so your request . . . is denied." Finally, the court stated: "The judge down in San Diego is imperfect, but a judge in San Diego, apparently after hearing from both parties, was in a position to order full legal and physical custody to [K.H.]. So I'm denying this request."

S.M. filed a timely notice of appeal.

DISCUSSION

S.M. argues K.H. violated the TRO by sending three e-mails to her on April 11, 12, and 13, 2023 and by saying insulting things to her before the DVRO hearing. She accordingly contends the court erred by failing to address whether these communications constituted abuse under the DVPA. S.M. also argues the court did not consider the totality of the circumstances. In support of the latter contention, she notes the court mistakenly believed she omitted certain allegations of abuse in her DVRO request and further failed to consider if her allegations of recent abuse warranted a DVRO. Finally, she claims the court improperly based its decision, in part, on the San Diego trial court's temporary, ex parte custody order.

For the reasons below, we find the trial court's ruling was prejudicially influenced by a misunderstanding of the record.

11

# I.

## APPLICABLE LAW AND STANDARD OF REVIEW

The DVPA defines domestic violence as abuse against a person with whom the respondent is having or has had a dating relationship or with whom the respondent has had a child. (§ 6211, subds. (c) & (d).) "Abuse" includes: (1) intentionally or recklessly causing or attempting to cause bodily injury; (2) sexual assault; (3) placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another; and (4) engaging in any behavior that could be enjoined under section 6320. (§ 6203, subd. (a)(1)-(4).) Among other things, section 6320 allows a court to enjoin stalking, threatening, harassing, contacting directly or indirectly, or disturbing the peace of the other party. (§ 6320, subd. (a.) In deciding whether to grant or deny a DVRO, the trial court "shall consider the totality of the circumstances." (§ 6301, subd. (c).)

We review orders granting or denying a DVRO for abuse of discretion. (*In re Marriage of Willis and Costa-Willis* (2023) 93 Cal.App.5th 595, 601.) We likewise review a court's failure to consider evidence for an abuse of discretion. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116.) But "'[t]he question of "whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review."'" (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601-602.) "'"To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review."'" (*In re Marriage of F.M. & M.M.*, at p. 116.)

# II.

## THE COURT'S MISUNDERSTANDING OF THE RECORD

At the hearing, the trial court provided two reasons for denying

12

the DVRO: (1) it did not find S.M. credible because it believed her DVRO request failed to mention K.H. had previously choked her or used a knife; and (2) the San Diego trial court granted full legal and physical custody of the children to K.H. "after hearing from both parties." Both of these stated reasons were wrong and unsupported by the record.

First, the trial court incorrectly believed S.M.'s DVRO request did not mention K.H. had previously choked her or used a knife. The court stated: "I'm not seeing anything in there about choking you and going to get a knife.I see the part you told me about he had a knife and—that one you already told me about, but none of these other things." The court questioned: "Why didn't you put in that he choked you before?People are in prison for choking people." The court further quizzed S.M.: "Don't you think a domestic violence judge would want to know someone had choked you?" For this reason, the trial court concluded S.M. was not credible and denied the DVRO. The court held: "I don't know how . . . [S.M.] . . . is . . . wanting me to understand things that she wouldn't put forward that same effort in applying for a domestic violence protective order and include that [K.H.] had choked her and on more than one occasion threatened to kill her with a knife.That doesn't help her credibility.I don't understand how that can be skipped or missed if you're really trying to protect yourself and protect your children."

The court was mistaken. S.M.'s DVRO request did mention the prior choking and use of a knife. The request stated: "On [October 17, 2022] he told me he was going to kill me. He was arguing with me he was telling me I was a 'bitch' and calling me a 'whore.' *He went up to me and choked me. He put both of his hands around my neck and pressed it. It was getting hard to breath[e].* He then took my phone and grabbed my wrist really hard that he left a bruise." (Italics added.) The DVRO request further stated K.H.

13

threatened to kill S.M. while passing a knife back and forth in his hand in March 2023. Immediately below this, S.M. checked off a box indicating she had been abused like this "2-5 times." The court's conclusion that S.M. was not credible was accordingly based on a mistaken assumption.

Second, the court denied the DVRO, in part, because it also mistakenly believed the San Diego trial court granted full legal and physical custody of the children to K.H. "after hearing from both parties." But both S.M. and K.H. testified they appeared before the San Diego trial court on April 14, 2023, and the San Diego trial court asked to hear back from the parties *after* they had attended the DVRO hearing in Orange County. S.M. testified: "[I]t wasn't even three minutes.She said that I can't do anything . . . . Then she said, 'You have to go to that hearing [in Orange County] on the 27th.'Like I said, we have the hearing tomorrow [in San Diego] and she wants copies of what happens today."

K.H. likewise explained the San Diego trial court questioned why S.M. did not call the police in San Diego and then said: "'[K.H.], I would love to hear the results of this in court on 4/28.'" Despite this testimony, the court still asked K.H.: "*After that hearing*, the [San Diego trial] court – Judge Miller . . . made those orders giving you custody of the kids?" (Italics added.) The court specifically referred to the order it had reviewed on K.H.'s phone. K.H. responded, "Yes, sir." The record does not support the court's finding that the San Diego trial court granted custody of the children to K.H. after hearing from the parties at the April 14, 2023 hearing. Indeed, the order the court reviewed on K.H.'s phone appears to have predated the April 14, 2023 hearing. On the record, the court stated it had reviewed an April 7, 2023 order from the San Diego trial court granting ex parte relief to K.H.

For the forgoing reasons, the court's factual findings were not supported by substantial evidence, and the ruling was based on incorrect reasons that could not support a denial of the DVRO. The court's reliance on a temporary, ex parte custody order issued in another case also calls into question whether the court weighed the evidence or even considered what constitutes abuse under the DVPA. (*Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1179 ["[A] discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal"]; § 6301, subd. (c) [the trial court must "consider the totality of the circumstances"].) We further note the doctrine of implied findings is immaterial for our review because the reporter's transcript plainly discloses the trial court's reasoning. "'When the record clearly demonstrates what the trial court did, we will not presume it did something different.' [Citation.] Thus, even in the absence of a statement of decision, we are not compelled to resort to a presumption if the record adequately demonstrates the legal theory the court applied." (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550; *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 950 ["[T]he record clearly shows what the trial court did at the . . . hearing, and we will not presume it did something different"].)

We understand the trial court has a very busy calendar and is tasked with making many decisions on DVROs in an expedited manner, with limited time to review the record. In such circumstances, facts could be overlooked or misread. We believe that is what occurred here, and we remand to give the court the opportunity to provide further review. The court may consider any new information or subsequent events that have transpired since the original hearing that would bear on whether there is any need to issue a

15

DVRO. Because we remand for the court to reconsider, we need not address S.M.'s remaining contentions.

## DISPOSITION

The order denying appellant's request for a DVRO is reversed, and the matter is remanded for further proceedings. Appellant shall recover her costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.